UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

BRYAN SEXTON,

                Plaintiff,

              v.                         13-cv-8557-AT
                                        ECF CASE

VINCENT LECAVALIER,

                Defendant.

----------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PRODUCTION

Gregory A. Blue
Dilworth Paxson LLP
Co-counsel for Plaintiff
99 Park Avenue
New York, NY 10016
917 675 4252
gblue@dilworthlaw.com

Leslie Trager
Co-counsel for Plaintiff
230 Park Avenue
New York, NY 10169
212 721 1192
tragerlaw@gmail.com

11439874_1

## FACTS

On October 10, 2013 plaintiff served Vincent Lecavalier ("Lecavalier") with a subpoena issued by an arbitration panel in the matter entitled *Bryan Sexton v. Jake Karam, Kent Hughes, Valdimir Shushkovsky, Ian Winter, CC Capital, Incorporated and "Red Star Poker,"* international arbitration number 50 148 T00408 11.   This arbitration is pending in New York, New York. (See exhibit A). The arbitration claim alleges that plaintiff has been frozen out of his investment in the Red Star Poker site and that Karam and the other respondents have been giving him false documents in order to conceal from Sexton the fact that the Red Star Poker site is very successful and generating huge returns.  Thus, Sexton claims that the company (CC Capital Inc.), which respondents claim is the owner of the Red Star Poker enterprise, is fictional and does not really own Red Star Poker. Respondents portray Red Star Poker as not being successful, as shown by the CC Capital financial reports. But this flies in the face of evidence obtained from the poker site itself and the reputation of this site as being one of the largest and most successful, catering to Russia and nearby countries and offering on line poker, gaming and sports betting   (See Trager declaration for details).

Because the evidence shows that Vincent Lecavalier ("Lecavalier") is a large shareholder, his records with respect to Red Star Poker were subpoenaed by

11439874_1

the arbitrators in order to attempt to learn about the actual company or companies which own the Red Star Poker site.

As set forth in detail in the Trager declaration, Mr. Lecavalier admits that he wired money to invest in Red Star Poker, but he has not produced any records relating to this. In addition, because it is very uncertain whether the records produced by his attorney on his behalf actually came to her from Mr. Lecavalier, it is important that these records, which all came from a computer, be produced in native format as required by the subpoena.

This memorandum will demonstrate that this Court has the power to compel Lecavalier to produce the documents called for in the required format.

I.  THE COURT HAS AUTHORITY TO COMPEL COMPLIANCE WITH A SUBPOENA ISSUED BY ARBITRATORS BECAUSE THERE IS DIVERSITY OF CITIZENSHIP BETWEEN THE PARTIES TO THE ARBITRATION AND THE WITNESS RESIDES WITHIN 100 MILES OF THE COURTHOUSE.

Because there is diversity between the parties to the arbitration, subject matter jurisdiction is not a concern. Diversity exists for an independent proceeding related to an arbitration when "the dispute that underlies the arbitration would come with the jurisdiction of the district court." *Amgen, Inc v. Kidney Center of Delaware County, Ltd.*, 95 F. 3d 562, 567 (7th Cir. 1996). In that case,

11439874_1

involving the subpoena of a non-party, the court was concerned whether diversity existed between the parties to the arbitration and remanded for such a determination. *Amgen* was cited with approval on this point in *Stolt-Nielsen SA v. Celanese AG*, 430 F. 3d 567, 572 (2nd Cir 2005). Given that there is complete diversity between the parties to the arbitration as set forth in the complaint, there is no question of this Court's jurisdiction.

This Court also has the power to enforce the subpoena of arbitrators. *Dynegy Midstream Service, LP v. Trammochem*, 495 F 3d 89, 92 (2nd Cir. 2006) held:

> Section 7 of the FAA empowers arbitrators to 'summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with or them any book , record, document, or paper which may be deemed material as evidence in the case.' ... Such a summons must be 'served in the same manner as subpoenas to appear and testify before the court' and may be enforced by the 'district court for the district in which such arbitrators,   or a majority of them, are sitting.'"

The court there held that service of process in an arbitration proceeding was governed by rule 45 of the Federal Rules of Civil Procedure. Rule 45 (b)(2)(B) provides for service "within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection." Since Lecavalier was served in southern New Jersey, near Philadelphia where he works, he was served within that 100 mile

11439874_1

limit for a hearing in New York, NY.  Thus, this Court has the power to enforce the subpoena in this case.

## II.   THIS COURT HAS THE POWER TO GRANT THE REMEDIES REQUESTED.

In *Stolt-Nielsen SA v. Celanese AG*, 430 F. 3d 567 (2nd Cir 2005) the court upheld the district court's enforcement of a subpoena issued by an arbitration panel.  In  so holding the court held: "[T]he District Court correctly observed, Section 7's reference to hearings 'before [the arbitrators] or any of them' suggests that the provision authorizes the use of subpoenas at preliminary proceedings even in front of a single arbitrator, before the full panel 'hears the more central issues.'" id. at 579.

*Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F. 3d 210, 218 (2nd Cir. 2008) held, quoting from Judge Chertoff in *Hay Group, Inc. v. E.B.S. Acquisition Corp*, 360 F. 3d 404, 413 (3rd Cir. 2004):

> "Arbitrators also 'have the power to compel a third-party witness to appear with documents before a single arbitrator, who can then adjourn the proceedings.'"

This was the procedure followed in this case as Lecavalier was required to produce documents at a hearing before the chairman of the panel. In fact, whatever he produced was done in advance of the scheduled hearing so that the hearing was unnecessary.

11439874_1

## III.    RELIEF REQUESTED.

As set forth in the moving declaration, Lecavalier wired "money for the purchase of shares in Red Star Poker."  But no documents relating to this wiring of money have been produced.   Indeed, his attorney first contended that there were none because Lecavalier was not an investor.  This contention is clearly not true and thus the requested documents should be compelled to be produced.

The subpoena also requested that those documents which were on a computer be produced in native format.  This is important in this case because there is a serious question whether the documents produced by Lecavalier's attorney actually came from Lecavalier or someone else.  Having the documents in native format may allow an expert to determine the source of the documents produced.

*[remainder of page intentionally left blank]*

11439874_1

## CONCLUSION

For the foregoing reasons, the relief requested by plaintiff to enforce the subpoena should be granted.

Dated: December 2, 2013
New York, NY

Respectfully submited,

Leslie Trager (LT 8995)
Co-counsel for plaintiff
230 Park Avenue, 10th floor
New York, NY 10169
212721 1192
tragerlaw@gmail.com

Dilworth Paxson LLP

By _____

Gregory A. Blue
Co-counsel for plaintiff
99 Park Ave.
Suite 320
New York, NY 10016
212 208 6874
gblue@dilworthlaw.com

11439874_1