UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRYAN SEXTON,

                              Plaintiff,

              -against-

VINCENT LECAVALIER,

                              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:    4/11/2014

13 Civ. 8557 (AT)

**OPINION
AND ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Bryan Sexton, moves pursuant to Section 7 of the Federal Arbitration Act, 9 U.S.C. § 7, and Federal Rule of Civil Procedure 45, for an order holding Defendant, Vincent Lecavalier, in contempt for failure to obey this Court's order directing Defendant to produce subpoenaed documents in "native" format. Defendant requests sanctions against Plaintiff and his attorney. For the reasons stated below, Plaintiff's motion and Defendant's request are DENIED.[1]

## BACKGROUND

On October 2, 2013, at Plaintiff's request, the Arbitral Tribunal of the International Centre for Dispute Resolution, a division of the American Arbitration Association (the "Tribunal"), issued a non-party subpoena to Defendant in connection with an arbitration pending before the panel (the "Subpoena"). Compl. ¶ 1, ECF No. 1. The Subpoena ordered Defendant to produce, prior to November 6, 2013, all documents in his possession relating to several business entities. Def. Mem. in Opp'n Ex. A, ECF No. 20-3. The Subpoena specified that "[i]f any of the documents called for are maintained in electronic format, the copies of the documents produced are to be in native format." *Id.* On November 12, 2013, the Tribunal issued a second subpoena, which ordered Defendant to appear before the Tribunal at a merits hearing to be held between

---

[1] This opinion memorializes an order issued from the bench on January 29, 2014.

December 9 and 13, 2013.  Def. Mem. in Opp'n Ex. K, ECF No. 20-13.

In response to the Subpoena, on November 5, 2013, Defendant's attorney, Brooke C. Madonna, Esq., submitted to the Tribunal various documents, including eleven e-mails that had been forwarded to Madonna from Defendant's Gmail account.  Def. Mem. in Opp'n Ex. B, ECF No. 20-4.  Madonna certified that she "caus[ed] true and correct copies thereof to be sent via electronic mail and overnight mail" to Plaintiff's attorney, Leslie Trager, Esq.  *Id*.  Defendant admits that these documents were not produced in native format.  Def. Mem. in Opp'n  Ex. P, ECF No. 20-18.  On December 13, 2013, Defendant testified before the Tribunal via video-link.  Def. Mem. in Opp'n Ex. S, ECF No. 20-21.

On December 2, 2013, Plaintiff initiated this action to enforce the Subpoena, pursuant to Section 7 of the Federal Arbitration Act.  Compl., ECF No. 1.  By order dated December 4, 2013, this Court ordered Defendant to show cause, at a hearing scheduled for December 9, 2013, why an order should not be issued directing Defendant to comply with the Subpoena.  Order, ECF No. 2.  Neither Defendant nor Madonna appeared.  On December 10, 2013, the Court issued an order directing that Defendant produce by December 12, 2013 "all documents called for by the Subpoena" and requiring that "all responsive documents located on any computer [be produced] in native format as required by the Subpoena" (the "Order").  Order, ECF No. 10.

In a December 12, 2013 letter from Madonna to Trager, Madonna stated that Defendant was unable to produce his e-mails in native format.  Trager Decl. Ex. C, ECF No. 15-3.  Attached to the letter was an affidavit from Steve Henderson, the director of the IT department at Madonna's law firm, stating that "it is not possible to electronically produce Google Gmail since we do not manage the infrastructure, but rather it is managed and controlled by Google."  *Id*.

On December 18, 2013, the Tribunal issued an order stating that the hearing on the merits

had concluded on December 13, 2013 and that "[n]ew arguments or new evidence will not be allowed in any of the post-hearing submissions on the merits."  Def. Mem. in Opp'n Ex. R, ECF No. 20-20.

Plaintiff now moves for an order holding Defendant in contempt for failure to comply with the Order.  Defendant requests sanctions against Plaintiff and his counsel for filing the contempt motion.

## DISCUSSION

As a preliminary matter, this Court notes that under Section 7 of the Federal Arbitration Act, it has jurisdiction to compel a testifying witness to comply with the terms of a subpoena and the power to require the attendant document production.  9 U.S.C. § 7; *see also Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008) ("[A]rbitrators may, consistent with section 7, order 'any person' to produce documents so long as that person is called as a witness at a hearing."); *Odjfell ASA v. Celanese AG*, 328 F. Supp. 2d 505, 507 (S.D.N.Y. 2004).

The Order directed Defendant to turn over "all responsive documents located on any computer in native format as required by the Subpoena."  Defendant concedes that he did not comply.  The December 13, 2013 arbitration hearing took place without the subpoenaed documents in requisite format.

I.   Native Format

The parties are not in agreement on the meaning of the term native format.  Defendant maintains that native format refers to the file format in which a particular document was created. According to Defendant, it is impossible for Defendant to produce the e-mails in native format because Defendant is a Gmail account user and Google does not permit its users to copy e-mails

and documents in native format.  Plaintiff, on the other hand, seeks a format that would preserve the properties and metadata associated with native files and suggests two methods for producing e-mails in such a manner.  Trager Reply Decl. ¶¶ 5, 16, ECF No. 21.  Plaintiff argues that either of the following file formats should be considered native for purposes of the Subpoena:  (1) Gmail e-mails that have been downloaded to an e-mail client such as Microsoft Outlook and saved to a disk in the format used by that mail client; and (2) Gmail e-mails that have been displayed in their "original" format by clicking "show original" on the Gmail website and subsequently saved as PDF files.  *Id.* at ¶¶ 5, 8, 16.  Plaintiff's counsel's declaration offers a detailed explanation of both of these methods for exporting files from Gmail.  *Id.*

The difficulty in this case arises from the fact that the Subpoena calls for the production of files located in the "cloud" and stored with a third-party e-mail provider.  Although Defendant may lack access to the files as they originally exist on Google's servers, this does not absolve him of his obligation to produce documents in a reasonably useable format.  As the Honorable Shira A. Scheindlin recently observed, e-mails may contain metadata with a significant amount of evidentiary value.  *See Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 506 n.71 (S.D.N.Y. 2013) (citations omitted).  Other courts considering requests for documents in native format have recognized the sufficiency of production methods that avoid the degradation or loss of valuable metadata.  *See, e.g.*, *Aguilar v. Immigration & Customs Enforcement Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 355-60 (S.D.N.Y. 2008) (describing Sedona Conference recommendation that "even if native files are requested, it is sufficient to produce memoranda, emails, and electronic records in PDF or TIFF format accompanied by a load file containing searchable text and selected metadata"); *S2 Automation LLC v. Micron Tech., Inc.*, 11 Civ. 884, 2012 WL 3656454, at *20 (D.N.M. Aug. 9, 2012) (ordering plaintiff to produce e-mail in either

native format or in the format defendant has requested); *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 88, 91 (D. Conn. 2005) (ordering production in TIFF format with corresponding searchable metadata databases).

In contrast to simply forwarding e-mails as Defendant did in this case, there are accepted e-discovery practices which better preserve the properties and metadata associated with native e-mail files.  With respect to Gmail e-mails, for example, an Indiana federal magistrate judge recently noted that "although Gmail does not support a 'Save As' feature to generate a single message format or PST, the messages can be downloaded to Outlook and saved as .eml or .msg files."  *See Keaton v. Hannum*, 12 Civ. 641, 2013 U.S. Dist. LEXIS 60519, at *4-5 (S.D. Ind. Apr. 29, 2013).  In the context of a request for native e-mails stored with a third-party provider, a functionally native format that preserves relevant metadata, such as those formats that can be generated through an e-mail client like Microsoft Outlook or through e-discovery collection software, should generally suffice.  Here, Defendant could have satisfied the Subpoena by providing the documents in such a format or as described in Plaintiff's submissions to the Court.

## II.  Contempt

A court may hold a party in contempt when the moving party establishes by clear and convincing evidence that the alleged contemnor violated a district court's order.  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).  "[A] contempt order is . . . a 'potent weapon, to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'"  *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144-45 (2d Cir. 2010) (citation omitted).  A court has the power to hold a party in civil contempt when (1) there is a "clear and unambiguous" court order; (2) there is clear and convincing proof of noncompliance; and (3) the party has not attempted to comply in a reasonably diligent manner.

*New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989), *cert denied*, 495 U.S. 947 (1990).

In this action, Defendant was not a party to the original arbitration and was subpoenaed to appear as a non-party witness pursuant to the Tribunal's authority under Section 7 of the Federal Arbitration Act.  Prior to the commencement of this lawsuit, Defendant responded to the Subpoena and produced, through his attorney, documents in Defendant's possession and subsequently testified before the Tribunal.  Defendant's attorney sent a letter to Plaintiff's counsel explaining that Defendant was unable to produce the e-mails in native format.  Attached to the letter was an affidavit from her firm's IT department explaining that Defendant, a Gmail user, cannot produce his e-mails in native format because Gmail does not permit its account holders to copy e-mails and documents in native format.

The parties should have resolved this matter without resorting to litigation in federal court.  Instead of bringing this action, Plaintiff could have communicated his request for a functionally native format to Defendant or the Tribunal much earlier, rather than in the various motion papers submitted to this Court.  Likewise, Defendant could have easily, and at little cost, provided the eleven e-mail documents in the requested format and obviated the need for this proceeding.  Rather than sort out their technological differences, however, the parties consumed valuable judicial resources while speaking past one another and now seek to impose penalties on one another.  This is not acceptable.

However, given Defendant's apparent good-faith belief that his Gmail e-mails cannot be produced natively, there is a fair ground of doubt as to the wrongfulness of Defendant's conduct. The absence of a settled definition of native format in the context of e-mails stored with a third-party e-mail provider counsels against a finding of contempt at this time.  *See Terry*, 886 F.2d at

1351-52.  Moreover, Plaintiff's motion is untimely.  The Tribunal's December 18, 2013 post-hearing order stated that the hearing on the merits concluded on December 13, 2013 and that "[n]ew arguments or new evidence will not be allowed in any of the post-hearing submissions on the merits."  Accordingly, Plaintiff's contempt motion is DENIED.

### III.  Sanctions

Defendant seeks sanctions against Plaintiff and his counsel under 28 U.S.C. § 1927 and pursuant to the Court's inherent power.  Under the Court's inherent power to impose sanctions, "a district court must find that:  (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay."  *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (citation omitted). "The showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is 'similar to that necessary to invoke the court's inherent power.'"  *Id*. at 143-44 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).  Plaintiff's claim was not without a colorable basis, and Defendant has failed to demonstrate that Plaintiff or his counsel have acted in bad faith.  Accordingly, Defendant's request for sanctions is DENIED.

**CONCLUSION**

For the reasons provided, Plaintiff's contempt motion is DENIED.  Defendant's request for sanctions is DENIED.

SO ORDERED.

Dated: April 11, 2014
          New York, New York

_____
          ANALISA TORRES
          United States District Judge